We will hear argument first this morning in Case 22-976, Garland v. Cargill. Mr. Fletcher? Thank you, Mr. Chief Justice, and may it please the Court. To fire a rifle fitted with a bump stock, the shooter simply places his trigger finger on the built-in finger ledge and uses his other hand to press the front of the rifle forward. As long as the shooter maintains that steady forward pressure, the rifle will fire continuously until it runs out of bullets, and it will empty a 100-round magazine, like the ones used in the Las Vegas shooting, in about 10 seconds. Those weapons do exactly what Congress meant to prohibit when it enacted the prohibition on machine guns, and those weapons are machine guns because they satisfy both disputed parts of the statutory definition. First, a rifle with a bump stock fires more than one shot by a single function of the trigger. In common usage today as in 1934, a function of the trigger happens when some act by the shooter, usually a pull, starts a firing sequence. With a semi-automatic rifle, it fires one shot for each function of the trigger because the shooter has to manually pull and release the trigger for every shot. But a bump stock eliminates those manual movements and allows the shooter to fire many shots with one act, a forward push. Now, Respondent says that a separate function of the trigger happens every time the trigger on a traditional rifle moves backwards and releases the hammer, even if it moves without any further manipulation by the shooter. But that is inconsistent with contemporaneous usage, does not account for guns with other kinds of triggers, and would make it trivially easy to evade the ban on machine guns just by automating the back and forth movement of the trigger after the shooter's initial pull. Second, a rifle with a bump stock fires more than one shot automatically, that is, through a self-regulating mechanism. Once the shooter presses forward to fire the first shot, the bump stock uses the gun's recoil energy to create a continuous back and forth cycle that fires hundreds of shots per minute. Now, Respondent says that that cycle is not automatic because the shooter has to keep up the forward pressure to keep the cycle going. But many traditional machine guns likewise require the shooter to maintain backward pressure on the trigger to maintain continuous fire. Either way, a single motion both initiates and maintains a multi-shot sequence, and either way, the weapon is a machine gun. I welcome the Court's questions. Mr. Fletcher, how does a machine gun, what would I have to do to fire a machine gun? It depends on the machine gun. Some it's a push of a button, some it's a pull of a trigger. The statutory definition is does it shoot more than one shot automatically by a single function of the trigger. But I don't have to do anything else? I don't have to put pressure on it or anything else? It depends on the gun, again. So if you imagine, I think what your question is getting at is if you take a traditional M16 rifle, we often think of when we think of a machine gun, you're right. To fire more than one shot, you pull the trigger and you have to hold it back, and as long as you maintain that backward pressure on the trigger, it keeps shooting. With a bump stock, what would I do different? You would do different, both the initial motion and the motion that continues. It's the same thing in the sense that one motion automates back and forth movement and results in multiple shots. So what is happening with a trigger-initiated firing of a machine gun? What do I have to do other than depress the trigger? With a traditional machine gun, again, take an M16, and again, we think they're all machine guns, but I understand the question to be take an M16, you pull the trigger back and you hold it, and it keeps shooting. With a bump stock, you push forward, and that both initiates and continues the firing. And what is happening with the trigger when you have the recoil? That's exactly right. So I think this gets to respondents' primary argument on function of a trigger, which is that the difference with a bump stock is that it fires multiple shots automatically by automating the movement of the trigger. So my friend says the trigger moves back and forth every time a shot is fired. Our view is that those subsequent movements of the trigger aren't functions of the trigger because they're not responding to separate acts, separate pulls, or anything else by the shooter. They're just the result of the body. What is happening with the trigger when someone doesn't need a bump stock to bump fire a weapon? So this is the unassisted manual bump firing that's described, where an expert can take a regular semi-automatic rifle and hold it loosely enough that they can do something like bump firing. I think in our view there, too, there's just one function of the trigger because the first push starts the sequence and then the sequence continues. The ATF explained, and we agree, that that's not automatic because there's no self-regulating mechanism. The user has to control the recoil. So what's the difference? The same thing is happening with the trigger. The same thing is happening with the trigger, and I think that's why we would say with manual bump firing there is just a single function of the trigger. There's one action that initiates the firing sequence. We think it's not automatic because there's no self-regulating mechanism. The user is having to do all of the work that the bump stock automates for you on a rifle fitted with a bump stock. I'm having a little trouble with the non-trigger hand. Are you just holding the gun or are you moving, pushing it forward and then back and forward and then back? So I think the best place to look for this, Mr. Chief Justice, is the District Court's factual findings, which are at pages 102A to 104A at the petition appendix. And what he explained is that from the shooter's perspective it's just one continuous forward push. The expert at trial said mentally you're doing nothing but pushing forward. Now, if you look and watch the slow- Continuously pushing forward? In other words, are you holding it with pressure or are you moving your hand? So what you are doing- I want to distinguish between those two things, actually, because what you are doing is just pushing forward. Now, if you look at the videos that we cite in footnote 1 of our reply brief, some of them are in slow motion, and they show that when the shooter is doing this, the hand is moving back and forth very fast, 600 times a second. That's not happening because the shooter is able to move their hand back and forth 600 times a minute. That's not happening because the shooter can move their hand back and forth that fast. That's happening because every time a shot is fired, the recoil drives the rifle backwards, overcomes that steady forward pressure momentarily. That's what lets the trigger reset, and then another shot to be fired again. So from the shooter's perspective, we view it as one act, and we think that's what the district court found. So would it be right to say that the pressure is, you know, on a typical machine gun where you're pulling and you're feeling, you know, continual backward pressure? And on this, you're feeling continual forward pressure of the opposite hand. Exactly. Is that right? Exactly right. I think that's exactly what the district court found. Mr. Fletcher, so I did watch all of these videos and try to figure out exactly what this looks like, and I just want to ask you about this bump firing thing. So what if I designed something and I call it a bump band? Because I gather you can do this with bands, and you can do it with your belt loop. So what if I designed and market something I call the bump band? To help me turn my semi-automatic, you know, in the same way. Why wouldn't that then be a machine gun under the statute? So we think that's still not functioning automatically because that's not a self-regulating mechanism. My understanding is that what those devices do is they help the shooter keep their trigger finger still, but the shooter still has to manage the movement of the rifle back and forth, hold it so that it moves backwards just the right distance in just the right direction, then hold it again so it moves forward in just the right distance in just the right direction. And what makes a bump stock different is that it's a device that is built for just this purpose. It has the finger wedge that holds your finger in place, but then it also has a sliding function built in so that when a shot is fired, the recoil automatically pushes the rifle back, lets it disengage from the trigger so the shooter doesn't have to manually release it, and then allows it to slide forward again, again just the right distance in just the right direction. Maybe Mr. Mitchell can help me understand from his point of view what that means, because it seems like it helps you do it better and in a more stable way, but that it functions the same way. But the other question I have, look, intuitively, I am entirely sympathetic to your argument. And it seems like, yes, this is functioning like a machine gun would, but looking at that definition, I think the question is, why didn't Congress pass that legislation to make this covered more clearly? I think your argument depends on volition, right? So let me give you a hypothetical, and then tell me if you think this satisfies the definition of machine gun. Let's imagine someone builds a fully automatic machine gun, and I won't try to come up with the technology for exactly how this is going to happen, but they install a trip wire on their property, and they just leave the gun there unattended, walk away. Somebody trips the wire, and then it begins shooting lots of rounds. Does that satisfy your definition of a machine gun? I think it does, yes. Why? Because a single act, and I think we've used different words like volition. I think the idea that we're trying to get at is, does some separate act, is that required, some manual act required for each shot, or is a single continuous act resulting in the firing of multiple shots? That's an unusual way to activate a machine gun, obviously, but I think even if it's a trip wire, that's still one act by a person that initiates a multi-shot fire. But it's an unintentional act in the same way you might say if your finger, because for the bump stop to work, you still have to have your finger right there, right? You do, yes. And according to the Fifth Circuit, what you're focusing on is the definition, you know, it looked at it from the perspective of the gun and the machinery of the gun, but you still do need your finger there to kind of pull back the trigger the same way that you would if it was volitional. So not quite, actually, Justice Barron. I think this is important. In the typical way that you fire these bump stops, and this is the Fifth Circuit acknowledged at 21A of the petition appendix, you don't initiate firing by pulling backward with your trigger finger. The trigger finger stays completely stationary. You initiate by pushing, and what the expert said and the district court found is you could replace your trigger finger with a little plastic post attached to the bump stop, and it would work in exactly the same way. So it's true that you have to keep your finger there, and if you moved your finger away, the bump firing sequence would stop, but that's a pretty trivial additional piece of input from the shooter. Really, what's starting and continuing the sequence is the push forward. Thank you. Can I ask you, just kind of maybe stepping back a moment, why do these various distinctions with respect to operations matter? I mean, I read this statute to be a classification statute that Congress is directing everyone or us to identify certain kinds of weapons, and those certain kinds of weapons are being treated in a particular way. They're being prohibited. And so I guess what I'm trying to understand is if it's true that, you know, the distinction that is being focused on here is the one between the movement of the trigger going back and forth or the trigger staying the same, I'm trying to understand why that matters for the purpose of this classification. So I think we don't think it does because we don't think function of the trigger means movement of the trigger. We think it means act of the shooter. That's how it was used at the time by educated speakers of English, including the president of the NRA, when he proposed the language that became the statute to Congress. And ever since, people have equated function of the trigger with pull of the trigger. That makes perfect sense if, like us, you read function of the trigger to mean some act by the shooter. I don't think that works on my forensic account. But I guess I'm wondering what I thought your answer was going to be. We don't think it matters because something you said in the intro, which was these are the kind of weapons that Congress was intending to prohibit because of the damage they caused or something like that. Like, I read the word function to be doing significant work in this statute. And when function is defined, it's really not about the operation of the thing. It's about what it can achieve, what it's being used for. So I see Congress as putting function in this. The function of this trigger is to cause this kind of damage, 800 rounds a second or whatever. And so the classification of weapons that we're trying to identify with this statute are those that function in that same way. So, Justice Jackson, I agree with most of that, but I want to be careful because our view is not that because Congress banned machine guns because they're dangerous, anything that's dangerous or that shoots fast is a machine gun. We draw the evident purpose of Congress that we think my friend's interpretation would frustrate from the text that Congress announced. Right. And so how about anything in which the trigger functions in the same way? And by function, I don't know that that necessarily means it has to move in the same way. It has to operate in the same way. It can function in the same way insofar as it automatically allows for 800 rounds to be released. So exactly. We think the function of the trigger is what lets the shooter start the firing sequence. And we think all of the parts of the statutory definition are aimed at, we're worried about guns that let you shoot many shots without repeated manual actions. Right. So it's a single function of the trigger. The shooter has to do one thing or many things. Thank you. Mr. Fletcher, on that score, can we just step back a minute? I can certainly understand why these items should be made illegal. But we're dealing with a statute that was enacted in the 1930s. And through many administrations, the government took the position that these bump stocks are not machine guns. And then you adopted an interpretive rule, not even a legislative rule, saying otherwise, that would render between a quarter of a million and a half million people federal felons, and not even through an APA process they could challenge, subject to 10 years in federal prison. And the only way they can challenge it is if they're prosecuted, and they may well wind up dispossessed of guns, all guns in the future, as well as a lot of other civil rights, including the right to vote. And I guess I just want your reaction to that. And I believe there are a number of members of Congress, including Senator Feinstein, who said that this administrative action forestalled legislation that would have dealt with this topic directly, rather than trying to use a nearly 100-year-old statute in a way that many administrations hadn't anticipated. Thoughts? There's a lot packed in there, so as you might expect, I have a lot of thoughts. I think the main one is this court often concludes that the government has interpreted the statute the wrong way and doesn't hesitate to correct the government's mistakes. I think the government should do the same thing. After the Las Vegas shooting, the deadliest shooting in our nation's history, I think it would have been irresponsible for the ATF not to take another closer look at this prior interpretation, which was reflected in a handful of classification letters, and to look at the problem more carefully. And having done that, I think it would have been irresponsible if the ATF concluded, as it did, that these devices are prohibited under the best reading of the statute, for the ATF not to fix the case. Then why not do a legislative rule properly, in which, I know you did notice some comment, but it was an interpretive rule, and an interpretive rule you can more or less just issue. And you don't even have to put it in the federal register. I mean, maybe you do in some circumstances, but not all. And you're creating a class of, again, between a quarter of a million and a half million people who have, in reliance on past administrations, Republican and Democrat, who said that this does not qualify under a very old statute, taken actions. And an interpretive rule, you can't even challenge it in an APA posture. Well, we are in an APA posture. They are challenging an interpretive rule. Well, I understand that, but in your reply brief, you say, ah, don't touch that, because that's not before us. That's not part of the QP. And in an interpretive rule, you don't get an APA challenge. You get a criminal prosecution against you is what you get. So I guess I disagree with that on a number of levels. First, I would think it would be better for those who are concerned about administrative power that we acknowledge this is an interpretive rule. The ATF doesn't have the power to make something a crime that wasn't a crime before. It's not a crime to violate the rule. It has been and always will be a crime to violate the statute. The ATF is saying we got that wrong before, and we're fixing it now. And you're right, it would be horribly unfair to prosecute people who possess these devices in reliance on the agency's past assurance. But that is taken care of through doctrines like entrapment by estoppel, which ensure that no one has been and no one will be prosecuted for possessing these devices during a time when ATF said it was legal. But that's not a reason to shackle the ATF, and certainly not a reason to shackle this court to adopt something other than the best reading of the words Congress wrote. And it's true, Congress wrote those words 90 years ago, but we think it used capacious language, like function of a trigger instead of pull of a trigger. And then in 1968, added parts that can be used to convert something into a machine gun, precisely because it understood that Americans have a lot of ingenuity and a lot of creativity. There are a lot of ways to build something that is a machine gun, and I don't think you should hesitate from applying the broad language that Congress wrote, consistent with the meaning that it has always had. Are you representing on behalf of the government that you're not going to prosecute anyone prior to 2017? Anyone who wasn't a felon or disqualified for some other reason? I am. ATF made very clear in enacting this rule that anyone who turned in their bump stock or destroyed it before March of 2018 would not face prosecution. As a practical matter also, the statute of limitations for this offense is five years, so in a month the statute of limitations would be gone. We have not prosecuted those people. We won't do it. And if we tried to do it, I think they would have a good defense based on entrapment by a felon. Second, the back and forth here leads me to believe that at best there might be some ambiguity. Now the question is, what's the best reading? And we have a whole slew of doctrines that talk about that, with respect to that we shouldn't render statutes ineffective by an interpretation. That's not the best reading, correct? Correct, exactly. And I think we've said that as far back as 1824. In the Emily, exactly. In the Emily case. And so I think your position is, if anyone's in doubt about this interpretation, that not including something that basically you hold in your hand and you let the recoil move it back and forth, if that's not automatic, then it doesn't make any sense that this is not a machine gun, correct? That's part of our argument, absolutely, and it's not just this device. I mean, we cite a number of the examples, and there are many more, of things that people have done to try to get around the ban on machine guns, and accepting some of the interpretations that my friend is offering today would legalize not just bump stocks, but those devices as well. One final question. Justice Barrett said something about she hoped Mr. Mitchell would explain something about why there was a difference in the functioning between the belt and the gun. Could you go through that again so that I think I understand it? Of course. So as I acknowledge and as the ATF explained in the rule, it is possible to do bump firing, meaning that the rifle moves back and forth and bumps against your stationary finger. An expert can do that without any assistive device at all. And you can also do it if you have a lot of expertise by hooking your finger into a belt loop or using a rubber band or something else like that to hold your finger in place. We don't think those things function automatically because the definition of automatically, I think everybody agrees, is by means of a self-regulating mechanism. That's what a bump stock is. It's a device that is purpose-built to harness the recoil energy of the gun, to automate the process of releasing the trigger, to move the rifle back just the right distance in just the right direction so that the trigger resets, and then to ensure that the rifle moves forward again, again, just the right distance, just the right direction. We think the cycle that's created by that means is by means of a self-regulating process. It's possible to do the same thing with a lot of manual work and manual control and expertise, but that's not unusual to say that something can be done automatically by a device if you eliminate a lot of manual movements that someone like an expert could take to do the same thing. Can I ask you about mens rea to pick up on Justice Gorsuch's questions? For prosecuting someone now, what mens rea showing would the government have to make to convict someone? So I think the relevant case is Staples, and I think what the court held in Staples is that you have to be aware of the facts that render your weapon. So even if you are not aware of the legal prohibition, you can be convicted? That's right, but that's true of all machine guns. I mean, all different sorts of devices. I think the distinct problem here is the one that's created by the fact that the agency was previously saying that these were not machine guns. We acknowledge that those people who, in reliance on that... So I guess I don't think so, Justice Kavanaugh. I think one of the reasons, to Justice Gorsuch's point, this is an interpretive rule that went through notice and comment. The reason was in part because the agency knew that it had previously been saying something different. It wanted to maximize public notice. Why not require the government to also prove that the person knew that what they were doing was wrongful, was illegal?  If the court wanted to revisit that in another case, a criminal case, you could. We haven't briefed that question here. But I think to the extent that you're concerned about that, it's not a concern unique to bump stocks. We mentioned all sorts of other devices, the forced reset trigger that we mentioned. The problem of people coming up with devices that they think get close to the line but don't go over, but that in fact go over the line and turn them into machine guns, isn't new and could come up anywhere. The problem here we acknowledge is ATF used to say something different about these, but we think that's taken care of by the rulemaking and the doctrine of entrapment by itself. Because people will sit down and read the Federal Register. No, I think because people who have these devices. That's what they do in their evening for fun. Gun owners across the country crack it open next to the fire and the dog. I take that point. I think, Justice Gorsuch, the fact that this rulemaking happened has not gone unnoticed in the community of people who are interested in firearms. Many people have availed themselves of the right to challenge our interpretation. We're defending it in court. The Supreme Court is hearing it. I agree. Not everyone is going to find out about those things, but we've done everything the government could possibly do to make it work. Let me ask you about the function of the trigger. You liken it to a stroke of a key or a throw of the dice or a swing of the bat. Those are all things people do. A function of the trigger. Do people function triggers? I thought maybe somewhere in fifth-grade grammar I learned that was an intransitive verb, and people don't function things. They may pull things. They may throw things, but they don't function things. Again, it's a very old statute, and it was designed for an obvious problem in the 1930s, an Al Capone, and people were with a single function of the trigger. That is, the thing itself was moved once, and that's what they wrote. Maybe they should have written something better. One might hope they might write something better in the future, but that's the language we're stuck with. Help me. That is the language we're stuck with, but I don't think it's as narrow as you suggest for a couple of reasons. I agree it's awkward to talk about a person functioning a trigger, but there's an easy explanation. The reason Congress used that word, not pull, is because Congress knew that there were lots of different ways to activate a trigger and wanted to cover all of them. I think the reason you know that it's referring to what the shooter does, there's really two. One is that's the way it's been understood ever since. The interpretation I'm giving you is the same one Carl Frederick, the president of the NRA, and many other courts, executive officials, congressmen gave at the same time. They used pull and function interchangeably. Second, I think even if you said we're going to focus just on the trigger, the function of an object isn't just some action by the object. It's the mode of action by which it fulfills its purpose, and the purpose of a trigger is to accept some input from the user. The way you know that is how everyone reacts when someone attacks it to some contraption, like the auto glove, which is a glove that you put on and you push a button and it has a little piston that pulls the trigger really fast. Or you attach a fishing reel, like the one the Fifth Circuit confronted in camp, where you flip a switch and it spins and turns the trigger over and over again. On my friend's reading, the function of the trigger with those devices is exactly the same because the curved metal lever is moving back and it's releasing the hammer every single time. But everyone, my friend included, realizes that that's not the function of the trigger in those devices. The function of the trigger is the user's flip of the switch or push of the button because that's the thing that allows an act by the user to initiate a firing sequence. Mr. Fletcher, I take it that the ATF defined the curved lever that you pull back as the trigger. Could it have defined the bump stock itself as the trigger? So, I'm not sure that it could have defined the bump stock itself as the trigger. I think we get into this a little bit in the reply, or a different argument maybe than the one that you're thinking of, but I think related in response to a move that's made in the red brief, where we hypothesize that if you had a machine gun that required you to pull the trigger and also hold down a button, it would still fire automatically, and we all understand that, even though you have to do two things rather than one. And what my friend said in the red brief is, well, in that case, maybe the button is part of the trigger too because you have to push the button to keep firing. And what we say in the reply, and what I think is true, is that if you were going to approach the statute that way, which isn't the way the ATF has, I think you'd still land in the same place because then you'd say it's both the curved metal lever and it's the part on the front of the rifle that the user pushes forward in order to initiate and maintain the firing sequence. Thank you, counsel. Justice Thomas? Justice Alito? What is the situation of people who have possessed bump stocks between the time of the ATF's new rule and the present day, or between the time of the new rule and the Fifth Circuit decision? Can they be prosecuted? I think probably yes, unless they had gotten some judicial relief from the rule. The rule has not been enjoined. It hasn't been vacated writ large. So I think the government has made clear that this is what we think the statute means. I'll say in practice... Isn't that disturbing? People in the Fifth Circuit who've been possessing firearms since the beginning of 2023, let's say they are aware of the Fifth Circuit's decision that they can be criminally prosecuted for doing something that the court of appeals that governs their territory has said is not illegal. Let me give a practical answer and then a doctrinal answer. I think practically I'm not aware of a lot of these prosecutions being brought because we recognize that there is some legal uncertainty. But I think doctrinally that could happen all the time, Justice Alito. Circuits disagree about what a criminal law means, and someone might, in reliance on their circuit precedent, do something that they think is lawful under circuit precedent that other circuits disagree with, that the government disagrees with, and that this court ultimately holds is covered by the statute. When we speak of the function of an inanimate object, don't we normally look at what that inanimate object does? So why isn't the function of a trigger to release the hammer... Why isn't the function of a trigger to release the hammer from the seer so that the hammer can swing forward and strike? Isn't that the most straightforward interpretation of this? I don't think so, and I think even if you thought that was true just looking at the text alone, the three indications that we've talked about, the contemporaneous usage by the president of the NRA and others, the application to other kinds of triggers, which everybody agrees are covered but which don't function by moving the hammer, and then also just evasion. I talked about some of them, but one of the devices that the Fifth Circuit has held is permissible, or I'm sorry, a district court in the Fifth Circuit has held is permissible, and the Fifth Circuit has declined to say is something called a forced reset trigger. And with a forced reset trigger, the ATF tested it, zip-tied the trigger back, and the gun shot multiple bullets. What the district court said is that under my friend's interpretation, there are multiple functions of the trigger because the trigger is wiggling back and forth imperceptibly and releasing the hammer separately each time, and so it's not a machine gun. And I think it's just not reasonable to read the statute that opens it up to that sort of evasion, and we're seeing concrete evidence of that evasion in the Fifth Circuit. Thank you. Justice Sonomayor? Just to be clear, when you're citing what congresspeople said or what the NRA president said, or what we said in some of our decisions because we've used pull of the trigger in describing a machine gun's function, correct? Exactly. You're not using legislative history in the traditional sense. You are pointing to common usage. Exactly right. Exactly right. We're not speculating. We're not saying that the bump stocks are machine guns because the president of the NRA wanted them to be. We're using that as evidence. Or that's what the Senate intended. You're saying it's a term of art. Exactly. If he had published this in an essay or in the New York Times, we would be pointing to it as evidence of contemporary meaning. We certainly don't think it should be less meaning. No, you're pointing to Supreme Court decisions that did it. Exactly. As this court does, too. It looks at literature. It looks at all sorts of sources to understand what did speakers of English understand the words to mean when congress used them. And we think this and many other things are powerful indications that we're right about that. Mrs. Kagan? Mr. Fletcher, you've talked a lot about the mechanics of these various devices. Could you give a sense of the different effects of these various devices? So you take on two poles, a semi-automatic weapon, let's say, and a conventional machine gun on the other. How many bullets and how much time? And then one of these bump stock weapons, where does that fall in the spectrum between those? Sure. So the rate of a semi-automatic weapon is not a fixed number because it depends both on the weapon and very much on the skill of the shooter. I think the Giffords-Amicus brief says the theoretical maximum for a very skilled competition shooter with a specialized weapon is something like 180 bullets a minute. In practice, it's much, much slower than that for the vast majority of people who would use one of these things. A fully automatic weapon... How much slower? I think, you know, it depends. I think more on the order of, you know, 60, something like that. I don't want to represent that that's exact, again, because there's a lot of variation. But the point is, that's the theoretical maximum practice, significantly slower than that. A traditional machine gun like the M-16 or the M-14, things that are issued to members of the American military, shoots in the range of 700 to 950 bullets a minute. There are obviously bigger things, like the things mounted on helicopters that shoot much, much faster than that. But I think for these purposes, that 700 to 900 is about the right benchmark. The Akins Accelerator, the original bump stock, shot at 650 rounds a minute. And the devices at issue here are represented to shoot between 400 and 800 rounds a minute. So right in that range with the M-16, the M-14. And they do it in the way... Again, I think rates of fire are important, but we acknowledge this is not a rate-of-fire statute. It's a function statute. But the function was, are you able to fire multiple shots without multiple manual movements? And I think the rate of fire is powerful evidence that there are not multiple manual movements going on here. Thank you. Mr. Schwartz. Mrs. Cavanaugh. You've referred a lot to the language in 1934 and around that time, but, of course, bump stocks didn't exist around that time. What are we to make of that? So I think you still apply the language, and you have to do what you have to do a lot, which is apply language that Congress wrote and apply it to something that didn't exist at the time. None of these workarounds, the fishing reel, the auto glove, the force reset trigger, all of them are new problems. But I think what you can draw is that Congress wrote a statute, chose the word function deliberately because it didn't want to just focus on triggers that pull, and then in 1968 it added parts that convert a normal gun into a machine gun because it recognized that people tried to do things to semi-automatic weapons in order to give them these same characteristics of multiple rounds with a single manual action. And then what's your explanation, maybe common sense explanation or some other explanation for why when this does become an issue, the Bush administration, the Obama administration, Senator Feinstein, all say no, bump stocks are not covered because if it were so, I don't want to use the word clear, but if so, if your position were correct, oh, this is a new thing obviously covered by this old statutory language, you would expect the Bush administration, the Obama administration, Senator Feinstein to say, of course it's covered by it. And they didn't, and that's reason for pause. It's not dispositive, but it's reason for pause. What's your explanation for that if you have one? So I agree with you. It's worth looking at and it's worth asking. I think that's why it's so important to put it in context, and if I could. So when the ATF first looks at these, it's the Atkins Accelerator in 2002. That's the bump stock with a spring in the back where you don't even have to push forward. And initially ATF tests it, the prototype breaks, but the ATF writes a classification letter, which is something relatively informal, just goes to the manufacturer, doesn't contain a lot of legal reasoning, says this isn't a machine gun because it doesn't have multiple functions of the trigger. Very quickly thereafter, ATF corrects that error, and in 2006 says the Atkins Accelerator is a machine gun because it does shoot multiple shots by a single function of the trigger. So that part we've been consistent on. The director of the ATF issued a ruling, 2006-2, that was consistent on that, and the agency has held that position ever since, and that's mostly what we've talked about today. It's true that in a series of additional, another informal classification letters issued between 2007 and 2017, the ATF said that non-mechanical bump stocks, those like the ones that issue here without a spring where you have to push forward, weren't machine guns because they didn't shoot automatically. But I think it's important to recognize those are informal, they don't include a lot of legal analysis, and I think maybe most importantly, no one defends the ATF's interpretation from those letters. What the ATF said there is this doesn't have springs or mechanical parts, so it doesn't make the gun function automatically. I think even my friend doesn't defend that interpretation. Everybody recognizes that there are things like Glock switches that we discussed in our reply brief that you can add to a semi-automatic weapon that make it a machine gun, and I think the fact that no one is defending the ATF's prior interpretation is a good indication that when Attorney General Sessions and Attorney General Barr revisited this, and we've continued to defend it since, they did a much more careful examination and got it right. And then, Senator Feinstein, I take your point. I guess with all respect to Senator Feinstein, I would say that the comments from a legislator who's trying to get a piece of legislation passed and is trying to demonstrate the need for that legislation by disagreeing with the administration about the scope of current law are not a particularly appropriate source of the meaning of the words that Congress enacted in 1934. Thank you. Justice Barrett? Justice Jackson? Can I just be clear on this function point? Because they say, I think, that a single function of the trigger, as it appears in the statute, is directing consideration of whether the trigger is moving only once. And I think you're saying that no, when it says the function of the trigger, it's not how the trigger operates. It's the function of the trigger is what it achieves, and the function that I think you're saying is that if by single operation, meaning single movement of the person, you can achieve firing multiple shots without multiple manual movements, that's what you said, that covers the function of the trigger. Is that what you're saying? Exactly. And I think the thing that makes this clearest is the boxes hypothetical on page 30 of our brief, where we say, imagine somebody builds a black box with a button on the top, and the shooter pushes the button once, and bullets come out of the front at a very high rate. On our view, that's a machine gun. But on my friend's view, if the inventor sets it up so that after the shooter pushes and releases the button, the button keeps moving up and down in the same way on its own, I think he's stuck saying that that's not a machine gun because the trigger is functioning each time a shot is fired. We don't think that's a plausible construction. So we'll ask him about that. And I guess yours is consistent, or it accounts for automatically more than one shot being in this definition. Exactly. Okay. Thank you. Thank you, counsel. Mr. Mitchell? Mr. Chief Justice, and may it please the Court, the statutory definition of machine gun extends only to weapons that fire more than one shot automatically by a single function of the trigger. Mr. Cargill's non-mechanical bump stocks fall outside the statutory definition for two separate and independent reasons. First, a bump stock-equipped rifle can fire only one shot per function of the trigger because the trigger must reset after every shot and must function again before another shot can be fired. Second, the trigger is the device that initiates the firing of the weapon, and the function of the trigger is what that triggering device must do to cause the weapon to fire. The phrase function of the trigger can refer only to the trigger's function. It has nothing to do with the shooter or what the shooter does to the trigger because the shooter does not have a function. The statute is concerned only with what the trigger does and whether a single function of that trigger produces more than one shot. Second, a bump stock-equipped rifle does not and cannot fire more than one shot automatically by a single function of the trigger because the shooter, in addition to causing the trigger to function, must also undertake additional manual actions to ensure a successful round of bump firing. Everything about the bump firing process is manual, and there is no automating device such as a spring or a motor in any of Mr. Cargill's non-mechanical bump stocks. The process depends entirely on human effort and exertion as the shooter must continually and repeatedly thrust the forestock of the rifle forward with his non-shooting hand while simultaneously maintaining backward pressure on the weapon with his shooting hand. None of these acts are automated, and the Solicitor General has yet to identify any component of Mr. Cargill's devices that automatically performs any task that is necessary for bump firing. The statute is unambiguous as applied to Mr. Cargill's non-mechanical bump stocks, and we ask the Court to affirm on that ground. Behind the government's argument is the sense that this statute was initially enacted because of what some of the individuals did during Prohibition, and there was significant damage from machine guns, carnage, people dying, et cetera. And behind this is the notion that the bump stock does the exact same thing. So with that background, why shouldn't we look at a broader definition of function, one suggested by the government, as opposed to just the narrow function that you suggest? The problem with the government's argument, Justice Thomas, is that the phrase single function of the trigger can only be construed grammatically to focus on the trigger's function and not on what the shooter does to the trigger, and that's so for many reasons. For one thing, there cannot be a subject of function because a shooter does not function a trigger. Only a trigger can have a function and not a shooter. Now, the Solicitor General is trying to replace the word function in the statute with the word pull, and if the statute had actually said a single pull of the trigger, that phrase would clearly refer to an act taken by the shooter. There's only a shooter can pull the trigger. The trigger certainly can't pull itself. So if the court is going to interpret the statute based on what it says rather than based on the purposes or perhaps the overarching goals of what the 1934 legislature might have been, there's no way it could accept the government's construction of the statute because it is changing the enacted words. Can I give you a way, possibly? Please. All right, so the statute says function, as we've all identified. Yes. And as far as I can tell, the sort of common usage of the word function is not its operational design. It's not the mechanics of the thing. It is what it achieves, what it's being used for. So I found definitions. Function is defined as the action for which a person or thing is specifically fitted or used, the acts or operations expected of the person or thing. So if you take that definition, it seems to me that through its use of the word function, Congress was trying to capture a class of weapons in which a trigger is used once to achieve a certain result, which says in the statute automatic firing many times. And so weapons with bump stocks have triggers that function in the same way. Through a single pull of the trigger or touch of the trigger, you achieve the same result of automatic fire of the weapon. So why is that inconsistent with grammar or the way the statute reads? Well, the premise of your Honor's question is not true. A single discharge of the trigger produces only one shot. It doesn't produce a round of automatic fire. The only way you get to repeated shots with a bump stock-equipped rifle is for the shooter himself to continually undertake manual action by thrusting the forestock of the rifle forward with his non-shooting hand. But that's not the trigger. He's holding the trigger or touched the trigger once, right? No, he touches the trigger every single time. He has to bump the trigger. I'm sorry, but the machine is moving. The machine is moving, but the trigger has to be bumped. So let me ask you a question. Yes. The other question is I understood this to be a classification statute in the sense that Congress is trying to identify and classify certain weapons. So if you're right, I want to understand why that matters. Why does it matter for the purpose of this statute that we have backwards pressure in the ordinary case of a machine gun and forward pressure here? You're saying there's a distinction being drawn. Bump stocks don't fit into this category because of this distinction, and I guess I don't understand why Congress would have prohibited one and not the other. Why does it matter? Well, it matters because the statute turns on whether the bump stock-equipped rifle will fire more than one shot automatically by a single function of the trigger. The statute is in context. The statute is classifying certain weapons for prohibition. So for it to make sense, we have to understand why this category of weapons are ones that Congress wants to prohibit. And you're suggesting that Congress is prohibiting through this classification weapons in which we hold it backwards and automatic fire happens, but we push it forward and automatic fire happens. Congress says no. There's no automatic fire. I'm sorry, Justice Jackson, there is no automatic fire. Sorry, 800 bullets. The conversation with Justice Kagan suggested that through a bump stock you can achieve the same kinds of result in terms of the amounts of bullets that are being ejected. That is true. It has a very high rate of fire, but it's not automatic. Right, but what I'm suggesting is that the category of prohibition is about the high rate of fire as opposed to the movement of the trigger. And if you're right that it's about the movement of the trigger, I'm just asking why. Why would Congress want to prohibit certain things based on whether the trigger is moving as opposed to certain things that can achieve this lethal kind of spray of bullets? Because the statute was written in 1934, about 100 years before we had bump stocks. So Congress drafted the statute at that time to capture the type of weaponry it wanted to prohibit in 1934. Your interpretation, Mr. Mitchell, though you've said this several times in your brief, captures a fair number of weapons that nobody had on their radar screen in 1934. So let me ask you about that and where the line is. Sure. If a gun fires multiple shots at the push of a button or the flip of a switch and just keeps firing. Yes, clearly that's a machine gun. That's a machine gun. Yes. That's United States against camp essentially. Okay. And if a gun does the same thing except now it's the push of two buttons. So one button that fires and then the other button that's necessary. Yes. Both buttons necessary. Yes. And neither are by themselves sufficient. Yeah. I thought you say also on page 45 of your brief that a push operated machine gun that requires the shooter to push and hold two buttons, that that would also qualify. Right. Because the two buttons together are acting as the trigger in that scenario. Okay. So the trigger is the device that initiates the firing of the weapon. So if you need to push two buttons and not just one, then both the two buttons combined are the trigger. Okay. So now instead of doing two buttons, suppose you had one button and with the other hand you held the trigger. One button that you're pushing and then with the other hand you're. Yeah. Instead of two buttons, it's one button and you held the trigger. And you need to do both to fire. You can't just do one. Same as you just had to do two buttons and you conceded the two buttons is a machine gun. So now I'm saying instead of pushing two buttons, you push one button and you hold the trigger. It's going to depend on how we define trigger. And the answer to that will not always be clear. The question is, can you extend the holding of the United States against camp to this particular situation? And I have to say, I think you don't quite know what the answer to that is. If you have an answer, let me know. Because the difference between pushing two buttons for me and pushing one button and holding the trigger is not self-evident. The pushing a button and holding the trigger and you need to do both. Same? Boy, I thought I was being pretty clear here. Yeah. You push two buttons, you say it's a machine gun. Now you don't push two buttons. You have to push one button and hold the trigger. That shouldn't make a difference that they're both going to be considered. It either has to both be machine guns or neither. I don't think you can draw a distinction. Correct. And you said the first is a machine gun, so the second has to be a machine gun. Okay. So now I guess I want to know, what's the difference between pushing a button and holding the trigger and pushing the barrel and holding the trigger? You've just described a bump stock. No, because you don't need to push the barrel forward to fire the weapon. You can fire the weapon just by clicking the trigger every single time, like a normal semi-automatic weapon fires. But what the bump stock does, Oh, you're saying you don't have to put pressure. Well, it's neither necessary nor sufficient to fire the weapon. The trigger is the device that initiates the firing of the weapon. Here's what I'm trying to say, and I appreciate you're going down this road of hypotheticals with me, but if pushing one button and holding the trigger is a machine gun, then a device that works by pushing the barrel, the front of the gun essentially, I don't know about these things, and holding the trigger, seems again to me to essentially do the same thing. And that is how everybody uses these devices. I mean, maybe you could use the device differently, but the entire point of this device is that you exert forward pressure and you have your finger on the trigger, and then a torrent of bullets shoots out. So I don't understand why it's any different from pushing a button and holding the trigger, pushing the barrel and holding the trigger. The difference is you don't need to push the barrel to fire the weapon. In the other hypotheticals that Your Honor is describing, you need to push those buttons to make the weapon fire. So the fact that there is a conceivable possibility of using these bump-stock devices in a way that does not take advantage of what these bump-stock devices do and are able to do, the fact that there is that conceivable possibility is what you are resting your entire argument on. Our argument depends on what's the trigger. The trigger is the device that initiates the firing of the weapon. A bump-stock does not change the trigger in any way. It does not alter the nature of the trigger. The other hypothetical devices that Your Honor is describing are changing the triggering device, either by requiring pushing two buttons rather than just one. Nothing in the bump-stock changes the trigger. The trigger is still, in this situation, the curved metal lever, and the Solicitor General has never contested that point, neither has DOJ at any point in this litigation. Mr. Mitchell, this conversation is totally confusing me because I thought that your argument depended on what the trigger, that the function of the trigger was what the trigger does mechanically inside the weapon. Therefore, whether you have one trigger or two triggers or three triggers or ten buttons, it doesn't matter. What matters is what the trigger or the triggers do inside the gun. Back in the day when it was possible to fire the standard military-issue rifles, M16 from the 1970s, on automatic, my understanding is that the military doesn't even, you can't even do that anymore. All you can fire at most is a burst of three shots. But there are two buttons on the old-time M16. You have to flip it over from semi-automatic to automatic. That's one button. And then the other button is the pulling of the trigger. But do I misunderstand your argument? No, you're not misunderstanding it at all. The function of the trigger is what the trigger does to cause the weapon to fire. That's what function of the trigger means. But to determine that, we need to first determine what exactly the trigger is before we can consider what is the function of the trigger. And there will be certain types of devices, like this motorized trigger device in the United States against camp, where the trigger actually is changed because you're no longer pulling the curved metal lever to set off the weapon. Instead, you're flipping some switch. Now I'm completely lost. The trigger is not doing anything. It's the person doing something. And it's the person choosing on an M16 whether they're going to keep the switch on semi-automatic or put the switch on automatic and turn the M16 into a machine gun. And on a machine gun, it's not the trigger that does this. It's the pressure that the shooter is using to hold the trigger down that permits it to keep going. That's what causes the trigger to function. Well, but that's what the government is saying, which is you're not looking at what the trigger is doing. You're looking at what the shooter is doing. And is he using a force, keeping the trigger down, or holding the bump stock and letting it shoot back and forth in an automatic recoil? Those are now things that changes the automatic nature of the firing. It still has nothing to do with what the shooter does. The question is, what does the trigger do when it functions? And if the trigger allows more than one shot to fire per function of the trigger, what is the single function of the trigger? The trigger, you're saying, can be a button. So why can't it be the bump stock that's forcing this thing automatically in a recoil motion to go back and forth? Because the bump stock doesn't fire the weapon. The bump stock is just a case in which the weapon slides back and forth. That doesn't do anything to fire the weapon. They haven't defined the bump stock as the trigger? No one defines the bump stock as the trigger. Could they have? No, they could not, because the bump stock is neither necessary nor sufficient for the firing of the weapon. It's the curved metal lever on the semi-automatic rifle that causes the weapon to fire. Mr. Mitchell, it seems to me the spirit of some of the questions you're getting are in the nature of the any circumvention principle, that, okay, maybe in 1934 a function of the trigger meant the firing, the essential thing that causes the weapon to fire. But the high rate of fire that's achievable through bump stocks is effectively the equivalent, and we should take cognizance of that. Your thoughts? It's just not what the statute says. It has nothing to do with the rate of fire. But the statute doesn't say a lot of things that you've agreed are prohibited under the statute. The statute doesn't think about buttons, and the statute doesn't think about switches. And I have to think that if I gave you a different hypo that said it was voice activated, that you would have to say, yes, that's a machine gun too. And the statute doesn't think about that. And I guess what Justice Gorsuch is saying is that you, in arguing this case, have had to do something very sensible because otherwise it would seem, you know, like, you know, this statute is loaded with anti-circumvention devices. The entire way this statute is written suggests that Congress was very aware that there could be small adjustments of a weapon that could get around what Congress meant to prohibit. And in all kinds of ways, you're accepting of that and saying, yes, you can circumvent it by that. You can circumvent it by nonconventional triggers. You can circumvent it by, you know, all these things that these hypotheticals I've been giving you. But you can circumvent it through this one mechanism. I'm not conceding that you can circumvent the statute, Justice Kagan. We're just interpreting the word trigger, which is a term that appears in the statutory text, and it has to be interpreted. When you're dealing with the motorized trigger device, that's an easy case in one direction because that has changed the trigger from the curved metal lever because the shooter is no longer using that to fire the weapon. Instead, there's a switch that is flipped, and that switch is now triggering the device because that is the function turning on the switch that then causes automatic fire to occur because there's some motor that's moving the trigger back. I'm sorry, I shouldn't say the trigger. The curved metal lever back and forth. That's United States against camp. This is an easy case because the bump stock doesn't change the trigger in any way. But what do you do about modification pieces? I guess I don't understand your argument insofar as I had taken the United States to always take the position, and I actually had a case about this when I was a district court judge, where the question was were these flat metal pieces that were mailed internationally to the defendant machine guns. And we were all confused. The jury was confused because we had this notion of what a machine gun was, and the government argued that this metal piece was a machine gun and brought in experts that said under this statute, anything that can be used to convert a regularly operating semi-automatic weapon into one that rapid fires qualifies. I'm sorry, Justice Jackson. That's wrong? Rapid fire is not the test under the statute. It's not whether it fires rapidly. It's whether it fires more than one shot automatically by a simple function of the trigger. I'm sorry. Okay. They said it could, but what we focused on was not whether that metal piece changed the way the trigger operated. Now, maybe you're saying that's wrong, but I guess what I'm focused on is that your argument seems to rest on the assumption that the function of the trigger, as Justice Alito says, is what the trigger does inside the gun. That's correct. Why is it irrational, wrong, et cetera, to think of the function of the trigger as what it does to cause the weapon to automatically fire more than one shot? If that's what we mean by function of the trigger, which is in the statute, automatically more than one shot, and what we're saying is if one operation causes the function of the trigger to make the weapon automatically fire more than one shot, I guess I don't understand why your reading is preferable to that when the common understanding of a machine gun is that it is doing this sort of thing at the end of the day. Well, it's because the trigger on a bump stock equipped rifle does not cause the rifle to automatically fire more than one shot. You still have to have manual action by the shooter in response to every single shot that gets fired. The shooter has to continue to thrust that four stock forward. Okay, and if that's true, that's true. It is true, yes. Okay. That is a distinction. My other question then comes in. Why does that distinction matter from Congress's perspective in terms of it writing a statute that it was trying to prohibit that? If you're right that that's the relevant distinction, I guess I need a reason why there's something inherently so much worse about a situation in which you push it forward rather than pull it back that we can reasonably say that that was a particular category that Congress wanted to prohibit. And that's what I'm missing in your argument. It doesn't make sense to me that we're going to identify guns on that purpose and say those are the ones that are prohibited when others that achieve the same result are not. It's because the statute was written in 1934 and Congress wasn't thinking about bump stocks when they wrote this statute. So you've said several times that you thrust with your non-trigger hand, thrust part of a gun forward. And I understood your friend on the other side to focus on it more as maintaining pressure. Right. Which is it? I mean, do you hold it? Do you have to hold it harder at certain points rather than others? Or are you actually moving it with the thrusting? You're definitely moving your hand back and forth. And Mr. Fletcher agreed with us on that point. The hand is moving. I think where our disagreement comes in is that Mr. Fletcher seems to characterize the action of the non-shooting hand, so the left hand for a right-handed shooter, as something where you are applying constant pressure in a certain direction, but the recoil is strong enough to overcome that pressure from the non-shooting hand and thereby move the weapon backward despite the forward pressure that's coming from the non-shooting hand. But that means that if I'm wrong, but that means that the way a shooter perceives it is by imposing constant forward pressure, not the shooter is thinking, I've got to do this really fast, you know, going back and forth. The shooter can do both. And it takes a lot of practice to master the art of bump firing. So there is always going to be recoil energy. And no person I think is strong enough to push forward in a way that overcomes the recoil energy. If they were, bump firing wouldn't happen. So for successful bump firing to occur, there needs to be that back and forth motion. There's recoil every time the rifle fires. There's still pressure from the left hand or the right hand if you're a left-handed shooter. There's still going to be pressure from that non-shooting hand. But the shooter can decide how much he wants to calibrate that pressure in response to the repeated recoils that he's getting from the bump firing. It doesn't have to be the same amount of pressure each time. The shooter just has to make sure that the hand is moving back and forth because that's the only way you can have successful bump firing. But to get back to your question, Mr. Chief Justice. But the shooter doesn't make sure that the hand is moving back and forth. That's the way the recoil operates. The shooter just makes sure that he's pushing forward and then the recoil operates to, in fact, even though the shooter is not experiencing this, is not volitionally experiencing this, the shooter is not moving his hand back and forward. That's probably right, unless the shooter is so strong that he has to ease off a little bit to make sure he doesn't overcome the recoil. But to my knowledge, I don't think there's anybody strong enough to actually be able to keep pushing and forcing it past the recoil energy. But, Mr. Chief Justice, I don't think the answer to this question matters in the end. Because even if we accept Mr. Fletcher's characterization, where it's just constant pressure with the same amount of force continuously over a sustained period of time, it's still a manual action. There's nothing automatic about that. The shooter is the one who is pushing. It's human effort, human exertion, nothing automatic at all about this process. And Mr. Fletcher said during his remarks that the bump stock harnesses the recoil energy of the weapon. That is false. With the Egan's accelerator, there is harnessing. Because the Egan's accelerator has a spring. So there will be certain types of bump-firing devices like the Egan's accelerator where you can accurately say that the bump stock harnesses the recoil energy of the weapon. Not so with respect to a non-mechanical bump stock. The weapon recoils, nothing is harnessed with respect to the recoil energy, and it is the shooter who must, with that non-shooting hand, continue to thrust the weapon forward in response. If I disagree with you about automatically, can you win solely on function of a trigger? Absolutely, yes. Why? Because the single function of the trigger, the solicitor general has to win on both arguments to prevail. We only need to win on one of the two. So we could win on automatically standing alone, we could win on single function of the trigger standing alone, or we could win on both. We respectfully ask the court to rule on both because there's a well-developed circuit split on each of the two sub-issues within the question. Well, speaking of automatically, can you address the question I asked Mr. Fletcher about a band bump firing? And, you know, he said it was different on the ground of automatically, but how do you see them functioning differently? They're indistinguishable when it comes to automatically. Everything involved with the band, Your Honor suggested, and also everything involved with Mr. Cargill's non-mechanical bump stock is a manual action undertaken entirely by the shooter. There is no automating device. Mr. Fletcher has yet to identify any device in the non-mechanical bump stock that automates any task that is necessary for successful bump firing. It is all being done by the shooter. There's the recoil after the shot gets fired, and that it is the shooter who must, with his own hand and with his own force, exert pressure forward consistently to make sure that the trigger bumps into his finger. This is all manual. Nothing automatic about it. Nothing at all. Can I ask you a variation of the hypothetical black box scenario that the government puts forward in there? And you might be familiar with it. It's in their brief. So they say that we've got two boxes, each of which continuously fires bullets after the operator presses and releases a button. If I hear you correctly, or maybe you can just tell me, box one, the operator pushes the button and the bullets come out automatically. Box two, the operator holds his finger slightly above the box, and there's something under the box that pushes the box up into his finger. So the finger is touching the trigger like a million times because in order for it to operate, the box is going like so, pushing up. One is machine gun, one is not. Same rate of velocity of bullets coming out. That's your view. The answer to that question depends on what is the trigger and can the holding of the United States against camp, that Fifth Circuit decision that said motorized trigger devices or machine guns, can the rationale of that case be extended to this hypothetical? So I think the way to think of this, Your Honor, is there are going to be easy cases at each of the extremes and there are going to be harder cases in the middle. The easy case is United States against camp because that is a situation where the trigger was changed. It no longer is the curved metal lever. Right, right, right. And your view is what makes it easy or hard is not the sort of thought of mine that like, geez, what makes it easy or hard is actually distinguishing those two in the real world, like in terms of what is actually happening. You think what makes it easy or hard is just identifying whether the finger is moving because the box is moving or because the person is pushing it down. What makes it hard is whether it's changed the nature of the trigger in some way. Clearly that happened in camp. This situation with Mr. Cargill, there's not even an argument that the trigger has to be changed. DOJ at no point in this litigation has argued that bump stocks change the nature of the trigger or change the trigger at all. There will be harder cases in the middle, such as the forced reset triggers and some of these hypotheticals that were discussed in the D.C. Circuit's opinions in 20s where there may be a question as to what exactly the trigger is and then how does that trigger function. So, again, going back to camp, when there's a flip of a switch that turns on a motor and that motor then forces the curved metal lever back and forth, that's automatic fire, that's a machine gun because we now have a new trigger, the switch. It's no longer the curved metal lever. So can that rationale be extended to some of these hypotheticals where we talk about black boxes and oscillating buttons? What exactly is the trigger there? Is it merely the button? Is it the motor that's moving the button up and down? It's arguable either way. We don't think the court should resolve any of that. I understand, but for us to take a position on the question, it's all going to depend on whether you can extend the holding of camp to these new situations. The Atkins Accelerator is a good example to think about because in 2006, when ATF changed its position on the Atkins Accelerator, ATF initially approved that device in 2002. 2006, it changed its mind. And if you look at the classification letter, their argument rests on an argument similar to what Mr. Fletcher is making today. They cite the legislative history from Carl Frederick and say that function of the trigger means pull of the trigger. That rationale is not going to work if the Atkins Accelerator is going to be characterized as a machine gun. What might work, though, is if there's some possible argument to extend the holding of the United States against camp to the Atkins Accelerator. Does that spring in the Atkins Accelerator change the nature of the trigger? That's the question that needs to be addressed. If ATF wants to continue to characterize the Atkins Accelerator as a machine gun, it's going to need to come up with a much better argument than what it offered in 2006. We're not closing the door on that possibility, but we do think the actual rationale that ATF has used is just as faulty as the rationale for banning non-mechanical bump stocks. Thank you, counsel. Justice Thomas? Mr. Mitchell, I think you would agree that the bump stock accelerates the rate of fire. Absolutely. Why wouldn't you then take the further step of saying it changes the nature of the trigger in doing that? Because the trigger still has to reset after every single shot. It's not accelerating the rate of fire by changing the trigger. It's accelerating the rate of fire...  So, why wouldn't you say that you have enhanced the triggering mechanism by using the bump stock? Because it's not changing the triggering mechanism at all. It's simply making it easier for the shooter to bump that trigger repeatedly. The nature of the triggering mechanism remains exactly the same. What's going on inside the gun after the trigger gets bumped is no different than what it would be if it were a semi-automatic rifle without the bump stock. And that's why the government can't win on this single function of a trigger point. I think the difference is that there may be some who believe, when you look at it, the nature of the firing has changed as a result of the bump stock. So, if that's changed, why don't you simply then look backwards and say that the nature of the firing mechanism has changed, thus the nature of the trigger has changed. What's changed, though, is the rate of fire. And it's still one shot per function of the trigger. Even though those shots are coming out of the barrel a lot faster than they were before, the question is, how many functions of the trigger do we have for each of the shots? And the answer is one. If you divide the number of shots that are fired from a bump stock-equipped rifle by the number of times the trigger has to function to produce that shot, the answer will always be one. And it will remain that way because nothing in the triggering mechanism has changed. Justice Alito, can you imagine a legislator thinking, we should ban machine guns, but we should not ban bump stocks? Is there any reason why a legislator might reach that judgment? I think there is. Bump stocks can help people who have disabilities, who have problems with finger dexterity, people who have arthritis in their fingers. There could be a valid reason for preserving the legality of these devices as a matter of policy, even while similar weapons such as the fully automatic machine guns are being banned. Whether Congress would ultimately make that judgment, we would have to wait and find out whether they would decide it along those ways. But there are respectable arguments for why these could remain legal as a matter of policy. Why would anybody... I'm sorry. That's okay. In the field of statutory interpretation, Justice Scalia's benoir was the Church of the Holy Trinity, a case where he thought that the literal language of the statute had to control, even though it's pretty hard to think that Congress actually meant that to apply in certain situations. As you see this case, is this another Church of the Holy Trinity case? I would say it's quite as egregious as Church of the Holy Trinity, but the arguments the government's making are certainly in the spirit of Holy Trinity, to borrow a phrase that was used from the Holy Trinity opinion. And I don't think a textualist judge can accept the rationale that's being offered by the U.S. government. And they are, in their brief, expressly making purposeless arguments along the lines of what we saw in Church of the Holy Trinity. Thank you. Justice Sotomayor? Why would even a person with arthritis, why would Congress think they needed to shoot 400 to 700 or 800 rounds of ammunition under any circumstance? If you don't let a person without arthritis do that, why would you permit a person with arthritis to do it? They don't shoot 400 or 700 rounds because the magazine only goes up to 50. So you're still going to have to change the magazine after every round. We allow large capacity magazines up to 50. And also, there are many shooters who can pull the trigger of a semi-automatic rifle very quickly, who can accomplish rates of fire similar to those that approach fully automatic weapons. Counsel, you spoke about legislative history, and I think you're trying to bat away all of the statements during the legislative process that called functions of the trigger, the single pull of the trigger by the shooter. But it's not classic legislative history. It's how people understood a term at the time. That's not legislative history. Well, it's still legislative history. They're just using it for a purpose that they claim. Well, Justice Thomas said in McDonald v. City of Chicago that it's perfectly acceptable to do that, to use, he said, it's being cited to show how lawmakers used a particular term that's different than what they intended. So if we're using legislative history in an effort to discern the original public meaning of the statute, which is how I understand your conversation, and I think that's how Mr. Fletcher is trying to characterize his reliance on this statement from Mr. Frederick. It's not just that. We've got statements from legislators in the House. We have statements from legislators in the Senate, all of them consistently translating function of the trigger to mean a single pull of the trigger. Right. And they're all wrong because the statute also was written to encompass weapons that have push triggers rather than pull triggers. And the Solicitor General acknowledges this point in their opening brief. What it suggests to me is that contrary to what you're saying, they never understood this to be how the trigger functions but how the shooter functions. No, I think we should draw the exact opposite inference. It proves how unreliable legislative history is as a tool to try to discern what the statute means. We're going to disagree. Well, it's because, Justice Sotomayor, the phrase pull of the trigger can't be equated with function of the trigger, and even the Solicitor General acknowledges that because they say in their brief that the statute needs to be read in a way that encompasses fully automatic weapons that have push triggers rather than triggers that are pull. And you agree. I'm sorry. Go ahead. And you agree. I agree that function can't be equated with the word pull. But the only way you can get there is by looking at what the shooter is doing. No, that's not correct. You don't need to look at what the shooter is doing. A weapon can go off by accident. You don't need a shooter. There's still a function of the trigger. If a weapon falls onto the floor and goes off accidentally with a discharge, the trigger has functioned, even though the shooter hasn't pulled the trigger or pushed it or bumped it. What matters under the statute is what the trigger does. And all these examples that we see in the Solicitor General's brief, Justice Gorsuch mentioned this earlier, when they're taking transitive verbs, when they say swing of the bat or stroke of the key or roll of the dice, all of those are transitive verbs that are capable of taking an object. So when you see swing of the bat, there's obviously an unnamed actor in that sentence that is the subject of the verb swing. The bat can't swing itself. The bat's an inanimate object. Function of the trigger is entirely different. Function is an intransitive verb. It can't take an object grammatically. It's impossible. Trigger has to be the subject of function. It can't be the object. I'm sorry. Justice Kagan? Because, Mr. Mitchell, I mean, those four words are not the entire statute, you know, function of the trigger. It's by a function of the trigger, and what's the by? It's shooting, you know, presumably a shooter is there, but, you know, maybe it happens spontaneously, but shooting more than one shot by a single function of the trigger. I mean, that's the relevant language, right? Shooting more than one shot by a single function of the trigger. And then there's also the automatic. Automatic, yes. So I don't want to ignore that. But it seems as if you look at the entire phrase. What that means is that Congress had wanted to delink the number of shots that were coming out of a barrel, right, more than one shot, wanted to delink that from a discrete human action. And I would think, you know, it might be you pull the trigger. It might be you push the trigger. It might be you switch on the trigger. It might be you voice activate the trigger. There's a discrete human action, and it produces a torrent of bullets. And that's exactly what's happening here. You push the bump stock. Now, you're saying, well, maybe they didn't define the bump stock as the trigger, but it functions in precisely the same way. And a torrent of bullets comes out, and this is in the heartland of what they were concerned about, which is anything that takes just a little human action to produce more than one shot is what they were getting at. That's just not the way they wrote the statute. If that's what they were getting at, they should have drafted the statute better than what they did. I mean, it depends on whether more than one shot is coming out by a single function of the trigger. And I agree with Your Honor. The rate of fire of a bump stock-equipped rifle approaches the rate of fire of a fully automatic weapon. And there may be good policy reasons to treat these as identical. There may also be good policy reasons to distinguish them. That's ultimately a decision for Congress to make. It's certainly not a decision for a court or for an administrative agency that's charged with implementing the instructions of Congress. Mr. Mitchell, I'll tell you, I view myself as a good textualist. I think that that's the way we should think about statutes. It's by reading them. But, you know, textualism is not inconsistent with common sense. Like, at some point, you have to apply a little bit of common sense to the way you read a statute and understand that what this statute comprehends is a weapon that fires a multitude of shots with a single human action, whether it's a continuous pressure on a conventional machine gun holding the trigger or a continuous pressure on one of these devices on the barrel. I can't understand how anybody could think that those two things should be treated differently. Well, they're treated differently because the statute turns on a single function of the trigger. And the problem for the government is they're not able to change the nature of the trigger that currently exists on a semi-automatic rifle simply by adding a bump stock, which is nothing more than a casing that allows the rifle to slide back and forth. The trigger is exactly the same as what it was before. And the function of the trigger is exactly the same as what it was before. I mean, think of a semi-automatic rifle where someone just has a very quick trigger finger. That could also have a very, very high rate of fire. But it's still one shot per function of the trigger. And that's the problem here the government still is not able to overcome. Every time that trigger functions inside a bump stock equipped rifle, there is one shot and only one shot that gets fired. Even though there may be rapid functions that occur consecutively because of the bump stock equipped. Thank you. Thank you. Justice Gorsuch? Justice Kavanaugh? In response to a lot of the questions, you've made the point that bump stocks were not around as of 1934. And that's a good point for you. But what evidence is there, if any, that as of 1934, the ordinary understanding of the phrase function of the trigger referred to the mechanics of the gun rather than the shooter's motion? Well, it had to. And the evidence that we can see is the evidence the Solicitor General points out about the fact that there were push triggers in existence at that time. And that function of the trigger, even though you can find legislative history where there seem to be people who think function of the trigger means the same thing as pull of the trigger, those phrases cannot be equated for that very reason. I guess I'm asking the opposite. Was there any evidence that someone was drawing that distinction? Drawing the distinction between push and pull? No, the distinction between the function of the trigger meant something different. I'm not aware of that in legislative history. Are you aware of that anywhere in communication at the time? Not at the time, no, because the communication, as we can see from the record, was rather sloppy. People were using pull of the trigger as a phrase that they thought was synonymous with function of the trigger. And that obviously is not the case. Okay, so no one that was saying, oh, function of the trigger, that's a different phrase than pull or push, and therefore means something different. Are you aware of anyone who said that anywhere in America at the time? I'm not aware of that, but as a textualist, I don't find that concerning because Well, as a textualist, you have to think about the phrase, not just each word in the phrase. That's right, that's right. And we look at the phrase function of the trigger, as I was saying earlier, and Justice Gorsuch made this point in some of his earlier questioning. Function of the trigger. We talked about this before. Trigger has to be the subject of function. It can't be the object of function. Right, and so the follow-on question is just focus on the phrase, and I'm just making the point, I don't think anyone said this at the time, which doesn't defeat your argument. I'm not suggesting it defeats your argument, but it would obviously help your argument if people were drawing that distinction. It certainly would help, but the phrase, given the way it's written right now, and the impossibility textually of trying to make trigger into an object of the verb. And then no one was drawing the distinction. Why would Congress have drawn that distinction? Your big point, I think, we've got to look at 1934. We've got to look at what Congress wrote. Why would Congress have drawn that distinction in 1934? Because they wanted to get the fully automatic weapons that had the push triggers, and if you use pull of the trigger, you're not going to reach those devices. So they had to say function of the trigger to make sure we encompass those forms of weaponry, as well as the conventional fully automatic weaponry. To cover push and pull. Push and pull, exactly. And how should it be defined now, in your view, you may have just answered this, to cover bump stocks. In other words, if tomorrow Congress said, Mr. Mitchell, how should we write the statute to cover bump stocks since function of the trigger, in your view, doesn't do it? Well, I'd have to ask them what else do you want to encompass besides bump stocks. If they want to make it specific. Just bump stocks. Give me a sentence that you think would cover bump stocks. I would provide a statutory definition of bump stock that tracks as closely as possible the non-mechanical devices that Mr. Cargill has. And I certainly wouldn't say single function of the trigger. It's not a great statutory language. You got anything better than that? I think you could say any device, and this may be a little too broad, but you could say any device that is used to accelerate the rate of fire from a semi-automatic weapon. That would certainly capture bump stocks. It might capture some other things, but those other things would be similar enough to bump stocks that Congress would probably want to ban them as well. Back in the 30s, some of the state statutes did that, I guess, at the time. Last question. You haven't made a Second Amendment or constitutional avoidance argument. In your view, are bump stocks covered by the Second Amendment, protected by the Second Amendment? We didn't argue that because courts are generally loath to decide constitutional questions when there's an easy statutory offering. You didn't throw it in as constitutional avoidance, and I imagine that was a considered choice. I'm curious what was behind that choice. There's nothing that prevents this court from invoking the constitutional avoidance canon on the Second Amendment issue, because there is a question, at least, whether this falls within the dangerous and unusual weapons carve-out in Heller. We don't have a position on that question because we didn't brief it, and also dangerous and unusual weapons is vague enough, but it's just not clear to us what the answer would be. Thank you. Thank you. Justice Barrett. Justice Jackson. So I guess I'm still not clear as to why you believe there's only one meaning of function of the trigger in this context. So why couldn't we read the words function of the trigger in this statute to mean the function of the trigger is to start a chemical reaction that leads to the expulsion of a projectile? If I read function of the trigger in that way, I think I come out to a different result than you are positing. So help me to understand why that couldn't be the function of the trigger. In other words, I know, I'm sorry. That's okay. Confusing question. You seem to be saying that the function of the trigger and the only one that Congress cared about that matters for the way this statute reads is the movement of the trigger. No, not necessarily the movement. Okay. Tell me. It's what the trigger does to cause the weapon to fire. Okay. What the trigger does. And it's moving with the movement. I'm saying what the trigger does, both in this case, in a bump stop case, and in a machine gun case, is to start a chemical reaction that leads to the expulsion of a projectile. There are other devices in the firearm that actually do that part. What the trigger does, it releases the power. No, no, no. But it's like causation, right? It's like Mrs. Paul's graph standing on the scale. I mean, the trigger, the trigger, you know, the function of it, right, one could say is to start this chemical reaction. Now, some weapons might do it with a button. Some might do it with a pull. Some weapons might do it by moving back and forth quickly, by the mechanics of the gun operating in a certain way. Others might do it by the mechanics of the gun operating in a different way. But I could say that the function is to begin the chemical reaction that results in the expulsion of this weapon. And that happens both in the bump stop situation and in this situation. So I don't understand why this statute couldn't be read the way that the government is. Even if you read the statute that way, Your Honor, I don't see how that wins the case for the government. Why not? Because only one shot is being fired per function of the trigger. No, single function. Right? If I read the single, there's only a single thing happened to begin the chemical reaction that expels the bullet. That expels one bullet, one shot. But then we go into the other part of the statute, automatically multiple shots. You can't forget the rest of the statute. That was Justice Kagan's point. So when you put those together, the work of the function of the trigger, I think, could be to start the chemical reaction that then results in the automatic more than one shot coming out of the gun. Why can't I interpret it that way? If that's what actually were happening, then I think you would have a plausible argument for why this is a machine gun. That's just not what happens. That's not the way it works. But that's just because you're interpreting the statute to say it has to be about the mechanics. No. And what I'm trying to understand is how that's consistent with Congress putting modifications in here. Can I just change a little bit? If you're right that Congress cared about exactly the mechanistic operation, then I'm confused as to why this statute also talks about modification. Because that suggests that Congress was not hung up on exactly how this gun operates. We're sweeping in all kinds of things, things that originally weren't designed to work this way at all. Right? We're allowing for machine guns to include things that can modify something that didn't operate this way at all into the kind of thing where a chemical reaction picks it off and it automatically fires more than one shot. If that's what I'm thinking about, then I guess I don't understand your hangup over how this operates mechanistically. Well, the test under the statute is whether it can be readily restored to fire automatically more than one shot by a single function of the trigger. It's not whether it can be modified to fire automatically more than one function of the trigger. All right. Well, I'll look that up. And just to get back to your earlier question, Justice Jackson, it's factually incorrect to say that a function of the trigger automatically starts some chain reaction that propels multiple bullets from the gun. A function of the trigger fires one shot. Then the shooter must take additional manual action. I understand. Thank you. Thank you. Thank you, Counsel. Thank you. A rebuttal, Mr. Fletcher? Thank you, Mr. Chief Justice. So I take from my friend's answers today that he does not seriously dispute that a rifle with a bump stock does basically the same thing as a machine gun and is basically just as dangerous as a machine gun. But his argument is the words that Congress wrote in 1934 just don't cover it because the words single function of the trigger unambiguously refers to the movement or the mechanics of the trigger without regard to the action of the shooter. We are not making a holy trinity argument. If that is what the words meant, then we would be stuck with the words. We are not asking you to depart from the plain language. We're asking you to give it its natural reading. And I think to understand why the statute not only can be but should be read our way, it's worth thinking about how many people you have to disagree with in order to adopt my friend's reading. So first of all, on the grammar, Judge Ho at page 56A of the petition appendix explains why it's perfectly natural to read function of the trigger to refer to what the shooter does to the trigger, not to what the trigger does by itself. Second, Justice Kavanaugh, you asked about contemporaneous usage. There's a lot of contemporaneous usage of people using the term pull of the trigger to be synonymous with function of the trigger. That makes perfect sense if we're talking about what the shooter does because the way the shooter activates most, not all, but most triggers is by pulling on them. But I think my friend conceded that usage is all inconsistent with his reading. And as you pointed out, there is no evidence that anyone at the time or ever since until the development of devices like these ever thought that function of a trigger meant mechanical movement independent of any action by the shooter. It's also worth emphasizing that even if you looked at what the trigger does by itself, what the trigger does is accept some input by the shooter. Justice Kagan, you asked about what about a voice activator trigger. You could also have a trigger that works by swiping a touch screen. Those triggers don't necessarily have any moving parts. On our understanding, we say, is there an act of the shooter that initiates the firing sequence? A spoken command, a swipe on the touch screen, it works perfectly. On my friend's understanding, I have no idea how he would deal with a firearm that had a trigger that did not have moving parts. We've also talked some about automatically. And I take my friend's point to be that he thinks because there's some continued manual input, the pushing forward, it can't be automatic. But automatic just means by way of a self-regulating mechanism. It doesn't mean it eliminates all manual input. It just means that it eliminates some of it. And contrary to what my friend said, a bump stock does eliminate manual action that the shooter has to take. With a semi-automatic weapon, you have to pull and release the trigger with each shot. With a bump stock, the bump stock allows the recoil from each shot to automatically push the rifle back, disengaging the trigger, eliminating the need for the shooter to manually release. And then it channels the forward and backward movement in exactly the right way to allow a continuous firing cycle to continue. Now, I think it's also telling some of the gymnastics with respect that my friend has to do in order to deal with all of the other hypothetical and actual devices that have been out there. Because I think he recognizes that the Aikens accelerator, the LV-15, the electronic reset assist device, the fishing reel in camp, all of these workarounds have to be covered by the statute because it's just not plausible to think that Congress enacted something subject to such easy evasion. But the only way he can say that those are covered is by engaging in very implausible understandings of what the trigger is. I think for the Aikens accelerator, he suggested that maybe the trigger is the spring in the back of the rifle rather than the lever that the shooter actually pulls to start the firing sequence. On the black box hypothetical, I'm still not sure what his answer is, but I think it must be that the button is the trigger the first time it moves up and down, but then it stops being the trigger when it keeps moving up and down afterwards. I think those are all very implausible interpretations that this court should not give to a statute if there's another reading available, and our view is that there is another reading available. In short, we think Congress in 1934 wrote this statute not just for the kinds of devices that existed then, but for other kinds of devices that could be created in the future that would do the same thing. It enacted and strengthened these laws because it did not want members of the public or our nation's law enforcement officers to face the danger from weapons that let a shooter spray many bullets by making a single act. That's exactly what bump stocks do, as the Las Vegas shooting vividly illustrated, and we think this court should give the words Congress wrote their full, natural meaning and hold the bank on this bump stocks. Thank you. Thank you, counsel. The case is submitted.